787 P.2d 433

**Alvin SMITH, Plaintiff–Appellee,**

v.

**FDC CORPORATION, Defendant–Appellant,**

v.

**Roger COX, Intervenor–Appellant.**

No. 18126.

Supreme Court of New Mexico.

Feb. 15, 1990.

516

F. Douglas Moeller, Farmington, for defendant-appellant FDC.

The Payne Law Firm, P.C., H. Vern Payne, Marcia E. Lubar, Albuquerque, for intervenor-appellant Cox.

Mettler & LeCuyer, P.C., Earl Mettler, Albuquerque, for plaintiff-appellee.

## OPINION

BACA, Justice.

Following a bench trial for damages based on claims of age and race discrimination in employment in violation of the New Mexico Human Rights Act, NMSA 1978, Sections 28-1-1 to -7, 28-1-9 to -14 (Repl. Pamp.1987), before the District Court of San Juan County, FDC Corporation (FDC), defendant below, and Roger Cox, intervenor, appeal the judgment of the court in favor of plaintiff Smith and the award of damages of $54,134 to be assessed against Cox for violation of a post-judgment discovery order. We affirm in part and reverse in part.

## FACTS

Smith, a Navajo Indian, worked at FDC's concrete factory and had been employed there for approximately ten years prior to his discharge in December 1983. At that time, Smith was fifty-nine years old; he was the only Native American employed at the plant, and fewer than five percent of the plant's employees were over age fifty. Although the job involved physical labor, Smith was qualified and physically and mentally able to perform the tasks required of him.

Smith was fired purportedly for being disrespectful to his supervisor and for operating a machine in an unsafe manner. A machine upon which Smith was working evidently was accidentally started up, threatening the foreman with physical injury. However, evidence indicated that the machine was under the control of the supervisor, not Smith, at the time of the

incident and that the foreman was operating the machine contrary to prudent safety measures. Additionally, although other incidents of unsafe operation of machinery had occurred at the plant, only Smith was terminated purportedly for unsafe practices; the other unsafe incidents all involved younger and non-Indian employees who were not discharged, although the accidents were at least of equal severity.

Several incidents indicate that age and race-based animus was directed toward Smith. The factory work force consisted mainly of young Hispanic employees. On several occasions, Smith's foreman called him "old man" and intimated a desire that Smith retire soon.

Smith was hired in 1973 at a wage of $4.00 per hour. After his termination, Smith attempted to find other work; however he was unable to locate full-time employment, although he occasionally hauled wood. He also received public assistance payments and social security.

Smith, after a judgment in his favor, initiated further discovery in aid of its execution. Cox, allegedly the sole shareholder of FDC but not a named party in this suit, was subpoenaed, and he was asked to produce certain documents. FDC was also issued a subpoena duces tecum. When Cox failed to comply with the discovery requests in a timely manner, the court sanctioned him by ordering him to personally satisfy the judgment.

Appellants have presented the following issues for our consideration: (1) whether there is substantial evidence to support the trial court's finding of discrimination and award of damages; (2) whether the court should have set off plaintiff's earnings from hauling wood, public assistance, and social security in determining damages; (3) whether the award of attorney fees was reasonable; and (4) whether the court improperly assessed the judgment against a nonparty as sanctions for noncompliance with discovery requests.

## I. WERE THE TRIAL COURT'S FINDINGS OF DISCRIMINATION AND DAMAGES SUPPORTED BY SUBSTANTIAL EVIDENCE?

The New Mexico Human Rights Act, NMSA 1978, Section 28–1–7, which tracks the language of the federal Civil Rights Act of 1964, 42 U.S.C. Section 2000e–2, makes it unlawful for an employer to discriminate against an individual on the basis of age or race.

In this suit based on NMSA 1978, Section 28–1–7, for Smith to prevail he was required to demonstrate that FDC discriminated against him in terminating his employment because of his race or age. Although the burdens of proof and methodology for proving employment discrimination under the New Mexico Human Rights Act have not previously been addressed by this court, the United States Supreme Court has considered this question in interpreting the Civil Rights Act of 1964, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] The evidentiary methodology adopted therein provides guidance for proving a violation of the New Mexico Human Rights Act. Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own. Our analysis of this claim is based on New Mexico statute and our interpretation of our legislature's intent, and, by this opinion, we are not binding New Mexico law to interpretations made by the federal courts of the federal statute.

---

1. The *McDonnell Douglas* methodology allows proof of discriminatory intent absent direct proof by creating a presumption of discrimination. Initially, a plaintiff bears the burden of showing a prima facie case by "eliminat[ing] the most common nondiscriminatory reasons" for the employer's actions. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. The burden then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for his actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Then, the plaintiff has the opportunity to show that the articulated reason is pretextual. *Id.* at 804–05, 93 S.Ct. at 1825–26. This burden merges with the plaintiff's ultimate burden of proof of intentional discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

The *McDonnell Douglas* methodology, whereby the burden of persuasion shifts in intermediate stages, was developed because often direct proof of discrimination is not available. The analysis allows proof of discriminatory intent absent direct proof. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). This framework, however, is not a required method of proof; it is only a tool to focus the issues and to reach the ultimate issue of whether the employer's actions were motivated by impermissible discrimination. *See id.* at 253 n. 6, 101 S.Ct. at 1094 n. 6; *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 81 (2d Cir.1983).[2]

A prima facie case of discrimination may be made out by showing that the plaintiff is a member of the protected group, that he was qualified to continue in his position, that his employment was terminated, and that his position was filled by someone not a member of the protected class. *Hawkins v. CECO Corp.*, 883 F.2d 977, 982 (11th Cir.1989); *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 n. 1 (2d Cir.1984).[3] A prima facie case may also be made out through other means; not all factual situations will fit into any one type of analysis, although unlawful discrimination may nevertheless be present. For example, a prima facie case can be shown absent a demonstration that the plaintiff was replaced by someone not in the protected class if he can show that he was dismissed purportedly for misconduct nearly identical to that engaged in by one outside of the protected class who was nonetheless retained. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273,

282–84, 96 S.Ct. 2574, 2579–81, 49 L.Ed.2d 493 (1976); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185–86 (11th Cir.1984). This prima facie case may then be rebutted by evidence that the plaintiff was dismissed based on a nondiscriminatory motivation. However, the entire *McDonnell Douglas* framework may be bypassed through a showing of intentional discrimination; the purpose of the test is to allow discriminated-against plaintiffs, in the *absence* of direct proof of discrimination, to demonstrate an employer's discriminatory motives. *See Loeb v. Textron, Inc.*, 600 F.2d 1003, 1018–19 (1st Cir.1979). When direct evidence of discriminatory motive exists, each element of the *McDonnell Douglas* test need not be proved—the New Mexico Human Rights Act prohibits discrimination based on age and race, and if a plaintiff, such as Smith, can show through direct evidence that he was discriminated against because of an impermissible categorization, that is all that is required for him to prevail. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985); *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1112–13 (4th Cir.), *cert. denied*, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981); *Loeb*, 600 F.2d at 1014.

■ FDC contends that there is no evidence supporting the court's finding of discrimination. It maintains that the statistical evidence presented was flawed and did not show that the composition of the work force demonstrated an unlawful pattern of discrimination. It argues that no evidence was submitted regarding the racial background of the work force, and that any

2. We are aware that the Supreme Court has recently revisited the questions of burdens of proof in a title VII case, the proper methodology in proving a prima facie case, and the use of statistical evidence. *See Wards Cove Packing Co. v. Atonio*, —— U.S. ——, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). *Wards Cove* is inapplicable to the case before us today; it considers a claim of disparate impact in the context of alleged discriminatory hiring practices. As such, it does not provide guidance to us in this case where direct evidence of discrimination has been shown and the claim is one of disparate treatment, and we express no opinion as to its applicability to New Mexico law.

3. One way of meeting the initial burden of persuasion is through the use of statistical evidence that may be introduced by a plaintiff to assist him in demonstrating an inference of discrimination through a pattern of discriminatory activity. *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir.1984); *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir.1975) (statistical evidence in individual suit goes to weight of evidence). It is not required, especially if the plaintiff can demonstrate direct evidence of discrimination.

evidence of the racial composition in the record is meaningless without evidence of the pool from which employees were drawn. Much of its argument is based on the contention that the evidence offered regarding the racial composition of the work force was based on a superficial analysis of surnames, which it maintains is not determinative of race. It further argues that there was a failure of proof concerning the race of other employees who were involved in accidents but were not dismissed.

In reviewing a decision to determine whether it is supported by substantial evidence, we examine the record for relevant evidence such that "a reasonable mind might accept as adequate to support a conclusion." *Toltec Int'l, Inc. v. Village of Ruidoso*, 95 N.M. 82, 84, 619 P.2d 186, 188 (1980). We resolve disputed facts in favor of the party prevailing below, indulging all reasonable inferences in favor of the verdict and disregarding contrary inferences, and we do not independently weigh conflicting evidence. *Id.*

Smith presented evidence that he was a member of two protected groups. He also presented evidence that he was qualified at the time of his termination to fully perform his job, that he was fired, and that other factory workers, who were not members of protected groups, were not dismissed when they committed similar safety infractions. Evidence was presented regarding the racial composition of the work force that indicated that there were few older or Native American workers in the plant. Although FDC is correct in arguing that the proof of the race of other employees, including those involved in accidents, is unsophisticated, there was evidence that Smith was the oldest employee in the work force and one of only several Native Americans. FDC did not rebut the anecdotal evidence presented, which was sufficient to support the inference that Native Americans and older workers were underrepresented in the work force, and company records submitted to the court supported Smith's testimony. FDC presented evidence demonstrating that Smith was legitimately terminated because of the accident that could have injured the foreman. Smith then presented evidence that this was a pretext, that the foreman caused the accident, and that others who were not members of protected groups but were guilty of similar safety infractions were not terminated. There was thus ample evidence in the record for the trial court to determine that the reason for the dismissal was race or age-based animus and not a valid business judgment.[4]

Furthermore, Smith presented direct evidence of age-based animus—Smith was called "old man," and the foreman had indicated that he was happily anticipating Smith's retirement. FDC contends that "old man" is simply a term of respect, an argument we find wholly unconvincing; in the trial court's discretion, it could easily be determined that such statements evinced age-based animus and evidence of discriminatory intent. *See Scofield v. Bolts & Bolts Retail Stores*, 21 Fair Empl. Prac.Cas. (BNA) 1478, 1480, 1979 WL 291 (S.D.N.Y.1979) (holding that the plaintiff made out a prima facie case of age discrimination based upon a showing that she was a member of the protected group, she was qualified and capable of doing her job, she was discharged, and that her manager called her "old woman," thus evincing age-based animus sufficient to demonstrate discriminatory intent). We find adequate evidence to support the trial court's similar determination here.

Thus, we find that Smith did make out a case that he was terminated because of his age and race, he did identify age and race-based animus, and he did demonstrate that he was treated differently than similarly situated young, non-Native Americans, to a

---

**4.** Although we agree with appellant that no evidence was offered regarding the racial composition of the pool of applicants from which the work force was drawn, and although Smith bore the burden of coming forth with evidence of discrimination, this lack of evidence is not determinative, especially as this was not a case alleging discriminatory hiring practices. Such statistical evidence may be helpful in showing intent to discriminate absent direct evidence of such intent, or in a disparate impact situation, where such intent is not determinative.

degree sufficient to support the trial court's judgment.

## II. DAMAGES

FDC contends that the trial court's award of damages was not supported by substantial evidence. It maintains that the trial court did not consider that Smith, subsequent to his termination, had alternative sources of income that should have offset and mitigated the damage award.

Specifically, FDC contends that Smith's income from hauling wood should have been considered by the court. Smith testified at trial that he hauled one load of wood per day, twice a week, earning $60 per load. Smith also received public assistance and social security. FDC estimates that, combining these sources of income, Smith earns over $6,000 more per year than he did while employed by appellant, and contends that, if Smith worked five days a week, he would make much more.

Further, FDC contends that there is no substantial evidence to support the court's finding that Smith earned $4.00 per hour while employed by FDC, stating that the only evidence was that Smith earned $4.00 per hour when he was hired in 1973 and that there was no evidence of his earnings at the time of his termination. FDC also assigns error to the court's finding of lost future income, contending that no economic forecast or statistical analysis was submitted concerning job market fluctuations or the likelihood of Smith not being able to find future employment.

### A. *The Rate of Pay*

■ An award of damages will not be disturbed if the trial court's determination is based on substantial evidence; it will not be reversed unless "it appears to have resulted from passion, prejudice, partiality, undue influence or some corrupt cause or motive, where there has been palpable error or the measure of damages has been mistaken." *Powers v. Campbell*, 79 N.M. 302, 304, 442 P.2d 792, 794 (1968) (quoting *Hammond v. Blackwell*, 77 N.M. 209, 421 P.2d 124 (1966)). On review, the evidence is considered in a light favorable to the verdict. *Nash v. Higgins*, 75 N.M. 206, 209, 402 P.2d 945, 947 (1965). Furthermore, in an employment discrimination case, once discriminatory activity has been proved, courts are willing to award damages despite uncertainty and the lack of precise measurement of injury as long as there is some evidence of damage, because of the public policy inherent in the law condemning invidious discrimination. *See Hairston v. McLean Trucking Co.*, 520 F.2d 226, 232–33 (4th Cir.1975); *United States v. United States Steel Corp.*, 520 F.2d 1043, 1050 (5th Cir.1975), *cert. denied*, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 260–61 (5th Cir. 1974).

■ We are at a loss to understand why evidence of plaintiff's wages at the time of his dismissal was not elicited from plaintiff at trial. Although future earnings may be speculative and difficult to precisely measure, surely Smith's current wage rate at the time of his dismissal was easily susceptible of proof and would have greatly aided the court in its determination of damages. Nevertheless, we find that there was sufficient evidence for the court to form a basis for its permissible speculation into Smith's lost earnings. *See White v. Carolina Paperboard Corp.*, 564 F.2d 1073, 1091 (4th Cir.1977) (allowing trial court to speculate amount of lost income based on known earnings); *Brown v. Rollins, Inc.*, 397 F.Supp. 571, 578 (W.D.N.C.1974) (back pay determination based on evidence of other employee's earnings). Smith presented evidence that he was hired at $4.00 per hour in 1973 and that the starting wage for workers at the plant was $3.75 an hour in 1983. The calculation of back pay by the court was permissibly based on this evidence.

### B. *Should the Court have Deducted Welfare Payments, Social Security, and Income from Self-Employment from Its Award?*

#### 1. Self-Employment

■ The court could reasonably have determined that evidence of Smith's income

from hauling wood was speculative and that the income he gained from the activity was sporadic and uncertain, and thus it reasonably refused to offset the damage award. Once discrimination has been proved, the employer bears the burden of uncertainty in damage calculation. *See Hairston*, 520 F.2d at 233. Because Smith was discriminatorily denied his employment, there is evidence he lost income. Although the court must mitigate damages if there is evidence supporting such a determination, *see Vigil v. Arzola*, 102 N.M. 682, 689, 699 P.2d 613, 620 (Ct.App.1983), *rev'd on other grounds*, 101 N.M. 687, 687 P.2d 1038 (1984), *overruled on other grounds, Chavez v. Manville Prod. Corp.*, 108 N.M. 643, 777 P.2d 371 (1989), we find that the court here could properly determine that the evidence of mitigation presented was too speculative to require that Smith's income from hauling wood should be applied to offset the damage award.

### 2. Welfare and Social Security

■ Public assistance and social security constitute benefits from a collateral source, and they are not subject to offset from an award of damages. *See Trujillo v. Chavez*, 76 N.M. 703, 708, 417 P.2d 893, 897 (1966); *Mobley v. Garcia*, 54 N.M. 175, 177–78, 217 P.2d 256, 257 (1950); *see also Maxfield v. Sinclair Int'l*, 766 F.2d 788, 793–95 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Littlejohn v. Null Mfg. Co.*, 31 Empl.Prac. Dec. (CCH) ¶ 33,587 (W.D.N.C.1983), *aff'd*, 732 F.2d 150 (4th Cir.), *cert. denied*, 469 U.S. 900, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984). Public sources that provide subsistence income do not constitute a windfall such that they should be offset against a damage award, especially when considered in light of the discriminatory activities of FDC that forced Smith and his family onto the public dole.

### C. *Was the Award of Front Pay Appropriate?*

■ FDC argues that the award of damages for future lost earnings, or front pay, was unsupported by the evidence and was error. Nevertheless, evidence was presented that Smith attempted to find work and was unable to do so, and, in consideration of the discrimination precipitating Smith's situation, it was not inappropriate for the court to estimate future lost earnings based upon Smith's past income. *See Patterson v. American Tobacco Co.*, 535 F.2d 257, 269 (4th Cir.) (allowing back pay award to be supplemented at trial court's discretion "by an award equal to the estimated present value of lost earnings that are reasonably likely to occur between the date of judgment and the time when the employee can assume his new position"), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 729 (2d Cir.1984) (allowing trial court discretion in age discrimination case to award front pay for four-year period from trial to compulsory retirement age). As the court in *Whittlesey* stated:

> [W]e think that front pay is, in limited circumstances, an appropriate remedy under the [Age Discrimination in Employment Act]. It serves a necessary role in making victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment.

742 F.2d at 729; *see also Maxfield*, 766 F.2d at 795–97 (upholding award of front pay when reinstatement not feasible).

We find that evidence of Smith's inability to find full-time employment in his locality, despite his strenuous efforts, constitutes sufficient evidence of his inability to mitigate damages to support the court's discretion in determining that future employment would be unlikely and to support an award of front pay.

### III. WAS THE AWARD OF ATTORNEY'S FEES REASONABLE?

FDC contends that the attorney's fees awarded, $9,750, were excessive, arguing that it does not believe that the hours that Smith's attorney claims were spent in preparation for this case were accurate and that two of Smith's causes of action, under 42

U.S.C. Section 2000e (1964) and 42 U.S.C. Section 1981 (1870), were dismissed.

 Reasonable attorney's fees may be awarded at the court's discretion to a prevailing complainant pursuant to NMSA 1978, Section 28-1-13(D) (Repl.Pamp.1987). As we have recently stated: "[T]he allowance of attorney fees is discretionary, but the exercise of that discretion must be reasonable when measured against objective standards and criteria." *Lenz v. Chalamidas*, 109 N.M. 113, 118, 782 P.2d 85, 90 (1989) (construing materialmen's lien statute). In determining the reasonableness of a fee award, a court should consider a variety of factors, including: (1) the time and effort required, considering the complexity of the issues and the skill required; (2) the customary fee in the area for similar services; (3) the results obtained and the amount of the controversy; (4) time limitations; and (5) the ability, experience, and reputation of the attorney performing the services. *Id.* at 118, 782 P.2d at 90; *Thompson Drilling, Inc. v. Romig,* 105 N.M. 701, 705, 736 P.2d 979, 983 (1987).

 In this case, the court made a finding of fact that, after considering the above factors and the hourly records submitted by Smith's attorney, the fee award was appropriate. The award was less than that requested by Smith's attorney. Additionally, Smith prevailed at trial on his claims of age and race discrimination, and the fee awarded was reasonable in terms of the total damage award to Smith. Although Smith did not prevail on his claims based on federal law, those claims involved the same underlying occurrences and similar relief—Smith's attorney did not waste time pursuing spurious claims. Accordingly, we conclude that the trial court did not abuse its discretion in awarding attorney fees, especially in light of the attorney's efforts subsequent to trial both in pursuing this appeal and in attempting to collect upon the judgment.

## IV. WAS THE JUDGMENT PROPERLY ASSESSED AGAINST A NONPARTY FOR VIOLATION OF A DISCOVERY ORDER?

 The parties dispute the factual predicate of this issue. However, they do agree on the facts necessary for our resolution. Intervenor-appellant Cox is an officer and shareholder of FDC. Subsequent to the trial, Smith sought to depose Cox to assist in execution of the judgment, and he also issued a subpoena duces tecum requiring FDC to provide certain documents pertaining to FDC's assets. Although the parties dispute the scope of the subpoena, whether Cox had knowledge of the request for documents, and whether Smith attempted to pierce the corporate veil to find Cox personally liable for the judgment, these facts are unnecessary for our disposition. It is undisputed, however, that Cox was not named a party to this suit prior to trial, and Smith did not attempt to bring Cox into the suit as a party post judgment. After the judgment was entered, Cox and FDC did not comply with the discovery requests, and Smith moved the court for an order compelling discovery. Cox and FDC failed to comply with the order, and the court ordered sanctions to be assessed against Cox, holding him personally liable for the judgment.

Cox contends that he was never a party to the lawsuit and that, as a nonparty, the only appropriate sanction for noncompliance with discovery was a contempt order. He further contends that because the notices of deposition in aid of execution of the judgment were filed prior to the judgment, they were void ab initio; that the court erred in imposing liability on Cox because it did not issue a writ of execution, and that because the sanction order deprived Cox of property without the due process of law, it violated the United States and New Mexico Constitutions.

Smith, on the other hand, contends that the sanctions against Cox were justified under the circumstances. He asserts that Cox's gross noncompliance with the order compelling discovery justified the sanction and that such a sanction was within the trial court's discretion.

Because we find that Cox's first contention is valid, we reverse that part of the judgment requiring that Cox be personally

liable. Because we find that the court abused its discretion by sanctioning a non-party in this way, we also find it unnecessary to address the other issues raised by Cox.

Upon a deponent's failure to comply with a discovery request, the party seeking discovery may apply for an order to compel. SCRA 1986, 1–037(A). Failure to comply with such an order is cause for sanctions. *See id.* 1–037(B). The choice of sanctions lies within the discretion of the trial court, and it will be reversed only for an abuse of discretion. *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 239, 629 P.2d 231, 315 (1980), *cert. denied*, 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981).

SCRA 1986, 1–037(B) states in pertinent part:

(1) If a *deponent* fails to be sworn or to answer a question after being directed to do so by the court in which the action is pending, the failure may be considered a *contempt of court.*

(2) If a *party* or an officer, director or managing agent of a party or a person designated * * * to testify on behalf of a party fails to obey an order to provide or permit discovery, * * * the court in which the action is pending may make *such orders in regard to the failure as are just,* and among others the following:

(a) an order that the *matters regarding which the order was made* or any other designated facts *shall be taken to be established* for the purposes of the action in accordance with the claim of the party obtaining the order[.] [Emphasis added.]

Smith argues that, because his discovery was directed toward finding information regarding piercing the corporate veil with regard to Cox, the court properly deemed those facts true. He contends that, having thus determined that the corporate veil was pierced, the court appropriately ordered Cox to personally be liable on the judgment.

This argument, however, is flawed because Cox was never made a party to the suit. SCRA 1986, 1–037(B)(1) addresses sanctions available to a deponent who is nonresponsive to discovery requests and states that only contempt is available. On the other hand, SCRA 1986, 1–037(B)(2) has much broader sanctions available, but these may only be directed against a nonresponsive *party.*

Accordingly, we hold that an order requiring that the judgment be paid by a nonparty is not an appropriate sanction for violation of a discovery order. We therefore reverse that portion of the judgment.

We are not unmindful that this may well leave Smith unable to collect on the judgment, and we are reluctant to allow FDC to evade its responsibility in this matter. On the other hand, we find that the trial court abused its discretion in assessing the judgment against Cox, and we find that its order cannot stand. Therefore, we do not want this opinion to be construed as leaving Smith without recourse. He may petition the trial court to join Cox as a party pursuant to SCRA 1986, 1–019 and then pursue post-judgment discovery in execution of the judgment. Alternatively, he may bring suit against FDC and Cox to pierce the corporate veil, *see Scott v. AZL Resources, Inc.*, 107 N.M. 118, 753 P.2d 897 (1988), or he may take any other appropriate action to collect the judgment.

We therefore affirm in part and reverse in part, while leaving Smith the opportunity to pursue any appropriate action against Cox, either in this proceeding in an action pursuant to execution of the judgment, or in a separate proceeding. Accordingly, we REVERSE in part and AFFIRM in part.

SOSA, C.J., and WILSON, J., concur.