This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39583**

**MARIAH RAMOS,**

 Plaintiff-Appellant,

v.

**SMITH'S FOOD & DRUG CENTERS, INC.; ELVIA MCKENZIE, an individual; MARISSA VIGIL, an individual,**

 Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Matthew J. Wilson, District Court Judge**

Anaya Law, LLC
Edward M. Anaya
San Francisco, CA

for Appellant

Rodey, Dickason, Sloan,
Akin & Robb, P.A.
Edward Ricco
Linda Vanzi
Albuquerque, NM

for Appellees

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Plaintiff Mariah Ramos brought this action alleging that Defendants Smith's Food & Drug Centers, Inc. (Smith's) and two employees, Elvia McKenzie (McKenzie) and Marissa Vigil (Vigil), (collectively, Defendants) discriminated against her in violation of

the New Mexico Human Rights Act (NMHRA), NMSA 1978, §§ 28-1-1 to -14 (1969, as amended through 2023), by failing to hire her as a courtesy clerk due to her pregnancy. *See* Section 28-1-7(A). Plaintiff appeals the district court's order granting Defendants' motion for summary judgment, which dismissed her claims, and its order awarding Defendants costs. Plaintiff contends that the district court erred in: (1) granting summary judgment on her pregnancy discrimination claim; (2) granting summary judgment on her reasonable accommodations claim; (3) limiting the time for discovery under Rule 1-056(F) NMRA; and (4) granting costs for Defendants.[1] We affirm the district court.

## DISCUSSION

{2}     "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "We review these legal questions de novo." *Id.* "The movant need only make a prima facie showing that [they are] entitled to summary judgment." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). A movant makes a prima facie showing when they introduce evidence "sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Romero v. Phillip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). "Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts[,] which would require trial on the merits." *Bank of N.Y. Mellon*, 2014-NMCA-097, ¶ 6 (internal quotation marks and citation omitted).

{3}     "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "An issue of fact is 'genuine' if the evidence before the court considering a motion for summary judgment would allow a hypothetical fair-minded factfinder to return a verdict favorable to the non-movant on that particular issue of fact." *Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 23, 294 P.3d 1276 (internal quotation marks and citation omitted). Ultimately, the determination of whether a genuine factual dispute exists is a question of law. *See Coates v. Wal-Mart Stores, Inc.,* 1999-NMSC-013, ¶ 21, 127 N.M. 47, 976 P.2d 999. On appeal, it is undisputed that Defendants made an initial prima facie showing supporting summary judgment.

---

[1]Because we affirm the district court's grant of summary judgment on other grounds, we need not address the parties' arguments about the exhaustion of administrative remedies, the propriety of naming certain defendants, and damages. We also decline to address Plaintiff's appeal regarding costs as the issue was not adequately addressed in briefing. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." (citation omitted)).

## I.       Pregnancy Discrimination

**{4}**       The NMHRA prohibits employment discrimination on the basis of pregnancy. Section 28-1-7(A) (2019).2 Our Supreme Court has recognized that the "evidentiary methodology developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 . . . (1973), provide[s] guidance in interpreting the [NMHRA]." *Cates v. Regents of N.M. Inst. of Min. & Tech.*, 1998-NMSC-002, ¶ 15, 124 N.M. 633, 954 P.2d 65. Our purpose when applying the *McDonnell Douglas* framework is to allow plaintiffs who have been discriminated against to demonstrate discrimination in the absence of direct proof. *Smith v. FDC Corp.*, 1990-NMSC-020, ¶ 11, 109 N.M. 514, 787 P.2d 433. However, if "direct evidence" of intentional discrimination exists, "the entire *McDonnell Douglas* framework may be bypassed." *Id.* In the employment discrimination context, direct evidence is evidence that "demonstrate[s] an employer's discriminatory motives." *Id.* Plaintiff argues that a conversation between human resources specialist McKenzie and interviewer Vigil after Plaintiff's interview is direct evidence of intentional pregnancy discrimination and, in the alternative, that other circumstantial evidence established Defendants' discriminatory motive. We first consider Plaintiff's argument regarding direct evidence of discrimination and then turn to the *McDonnell Douglas* framework.

## A.       Direct Discrimination

**{5}**       An employer violates the NMHRA if it refuses to hire an otherwise qualified candidate based on a discriminatory motive unless the employment decision is based on a "bona fide occupational qualification." Section 28-1-7(A). Plaintiff contends that conflicting testimony about a conversation between McKenzie and Vigil after Plaintiff's interview in which they discussed Plaintiff's pregnancy indicates that there are disputed issues of material fact regarding Defendants' discriminatory intent. However, Plaintiff's argument fails to overcome Defendants' assertion that the decision not to hire Plaintiff was based on a bona fide occupational qualification because Plaintiff was not "otherwise qualified" for the courtesy clerk position.

**{6}**       Our Supreme Court has defined the term "otherwise qualified" to refer "to a person who, though affected by a handicap or medical condition, maintains the underlying ability to do the job." *Kitchell v. Pub. Serv. Co. of N.M.*, 1998-NMSC-051, ¶ 6, 126 N.M. 525, 972 P.2d 344 (internal quotation marks omitted). On appeal, Plaintiff claims that she met the burden of establishing that she was "qualified" for the position to which she applied. We agree with the district court that Defendants introduced evidence that sufficiently established that Plaintiff could not perform the duties of a courtesy clerk.

---

2At the time Plaintiff filed her complaint, the NMHRC did not explicitly contain protections against pregnancy discrimination. *See* § 28-1-7(A). Instead, complaints of pregnancy discrimination were treated as gender discrimination. *See, e.g., Jaramillo v. J.C. Penney Co.*, 1985-NMCA-002, ¶ 1, 102 N.M. 272, 694 P.2d 528. Section 28-1-7 has since been amended to add protection against pregnancy discrimination. 2020 N.M. Laws, ch. 49, § 2. Though this amendment did not change the law with respect to the issues involved herein, and thus our analysis remains the same, we rely on the version of the statute in effect at the time Plaintiff filed her complaint.

**{7}** Plaintiff expressed concerns about meeting the minimum physical requirements of the position. The courtesy clerk position requires lifting up to 50 pounds throughout a shift, carrying cleaning supplies, cleaning bathrooms, and pushing carts. Plaintiff testified that she would not want to be in a job while she was pregnant where she would have to "over-exert [her]self by lifting too much weight." She further testified that ten to fifteen pounds was more "weight than [she] should be lifting when [she was] pregnant." Additionally, during her interview, Plaintiff told Vigil that she was concerned about cleaning because she "didn't want to be around fumes" and that "she preferred not to" push carts. This evidence clearly indicates that Plaintiff could not perform the essential functions of the courtesy clerk position.

**{8}** To rebut this evidence, Plaintiff contends that because Vigil testified that Plaintiff "*might* be able to do the job" despite Plaintiff's own concerns to the contrary, Plaintiff met her burden of demonstrating that she was, in fact, minimally qualified. We fail to see how this contention creates a genuine and material issue as to whether Plaintiff was minimally qualified. This testimony cannot furnish Plaintiff with the capability to meet those job requirements that she stated she felt she could not perform at the time of the interview. We hold that a reasonable jury, based on the facts presented, could not have found that Plaintiff was qualified for the position, and thus she failed to make a case of pregnancy discrimination.

**{9}** Even if we consider Plaintiff's supposed direct evidence of discriminatory motive, Plaintiff fails to create a genuine dispute of material fact as to Defendants' motive sufficient to preclude summary judgment. Direct evidence is "explicit and requires no inferences to establish the proposition or conclusion being asserted." *Romero*, 2010-NMSC-035, ¶ 13 (internal quotation marks and citation omitted). McKenzie testified that Vigil stated she did not hire Plaintiff because Plaintiff was pregnant and "she said she couldn't do certain things." However, Vigil testified that she never discussed Plaintiff's pregnancy with McKenzie. Plaintiff argues that this conflicting testimony creates a genuine dispute of material fact and that this conversation constitutes direct evidence of pregnancy-based discrimination because "it questions [her] abilities because of her pregnancy." We disagree.

**{10}** Vigil and McKenzie's conflicting testimony regarding this conversation does not create a genuine dispute of material fact because the statements testified to by McKenzie do not constitute direct evidence of discrimination. Assuming McKenzie's testimony is an accurate representation of the conversation, on its face, the conversation reflected Plaintiff's own statements of concern regarding her ability to perform certain essential functions of the position due to her pregnancy. *See DiMarco v. Presbyterian Healthcare Servs., Inc.*, 2007-NMCA-053, ¶ 6, 141 N.M. 735, 160 P.3d 916 ("In determining whether the nonmoving party has raised a genuine issue of material fact, we view the facts . . . in the light most favorable to the nonmoving party."). Without inference, *see Romero*, 2010-NMSC-035, ¶ 13, this conversation does not suggest a directly discriminatory statement. At most, it shows that Vigil believed Plaintiff's pregnancy was the reason Plaintiff herself expressed concern about performing the job requirements of a courtesy clerk. Plaintiff does not demonstrate how

this testimony indicates Defendants treated her differently than non-pregnant applicants. Therefore, this testimony does not provide a basis for a hypothetical fair-minded fact-finder to view the conversation as direct evidence of discrimination because, even taken in the light most favorable to Plaintiff, the statements merely indicate Defendants' discussion of Plaintiff's own concern that she would not be able to perform essential job requirements.

**{11}** "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Sonntag v. Shaw*, 2001-NMSC-015, ¶ 27, 130 N.M. 238, 22 P.3d 1188 (internal quotation marks and citation omitted). Based on the above, we conclude that Plaintiff did not establish a dispute of material fact supporting her claim of pregnancy discrimination. As a result, we must now examine Plaintiff's claims for pregnancy discrimination under the *McDonnell Douglas* framework.

## B.    Prima Facie Discrimination

**{12}** When asserting NMHRA claims of discrimination under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of demonstrating a prima facie case of discrimination, after which the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 9, 139 N.M. 12, 127 P.3d 548. The plaintiff then may rebut the defendant's proffered legitimate reason as merely pretext or otherwise inadequate. *Id.* Applying this analysis, we conclude that Plaintiff did not establish a prima facie case of pregnancy discrimination.

**{13}** To prove a case of prima facie discrimination, a plaintiff must show: (1) they are a member of a protected class; (2) they applied and were qualified for a job for which the employer was seeking applicants; (3) they were not hired, despite their qualifications; and (4) the position was filled by someone not a member of the protected class.[3] *McDonnell Douglas Corp.*, 411 U.S. at 802; *Smith*, 1990-NMSC-020, ¶ 11.

**{14}** It is undisputed that Plaintiff was a member of a protected class. *See* § 28-1-7(A). Additionally, it is undisputed that the position was filled by an applicant who was not pregnant. Thus, the issue here is whether Plaintiff was qualified for the position and whether she was not hired, despite her qualifications, because of her pregnancy. As discussed, inter alia, Plaintiff was not qualified for the courtesy clerk position. Therefore, Plaintiff failed to make a prima facie case of discrimination and summary judgment was properly granted in Defendants' favor.

**{15}** Even assuming that Plaintiff established that she was qualified for the position, and thus made a prima facie case of discrimination, Defendants produced a legitimate,

---

[3]The elements of this framework are flexible to meet the facts of a particular case. *See Smith*, 1990-NMSC-020, ¶ 11. A slightly different formulation of the second and third elements were used in *McDonnell Douglas Corp.*, 411 U.S. at 802, and that formulation, as enunciated above, best fits the facts of the instant case.

nondiscriminatory basis for hiring another candidate that Plaintiff failed to rebut. *See Juneau*, 2006-NMSC-002, ¶ 9. The undisputed facts show that Plaintiff expressed concerns about performing some of the essential functions of the position, while the successful candidate was "fine" performing "all [of] the job tasks and functions." Vigil asserts that the successful candidate's maturity, willingness to perform the job functions, and past supervisory experience were the reasons that Vigil chose him over Plaintiff. Plaintiff did not introduce evidence sufficient to dispute this reasoning. Experience and a willingness to perform essential job functions is a legitimate, nondiscriminatory reason to hire another candidate over Plaintiff. *See Cates*, 1998-NMSC-002, ¶ 22 (affirming summary judgment when the district court found that relevant experience was a legitimate, nondiscriminatory business reason). Therefore, under the *McDonnell Douglas* framework, the burden shifted to Plaintiff to produce direct evidence of pregnancy discrimination, which she failed to do, or to prove that Defendants' reason for not hiring Plaintiff was pretextual. *See Juneau*, 2006-NMSC-002, ¶ 9. Plaintiff also failed to meet this burden.

**{16}** The record contains no evidence that Defendants' decision not to hire Plaintiff was pretextual. Plaintiff argues that Vigil "did not remember the basis for her decision" to hire the successful candidate and "[a] decision to hire a replacement based on unknown qualifications cannot fairly be labeled a 'legitimate' business decision." However, we do not read this testimony to support such a claim, and we are unpersuaded by this argument. Vigil testified that the successful candidate stated in his interview that he had some supervisory experience, but she could not recall, two years after hiring the other candidate, why she thought the candidate's supervisory experience would be an asset. There was no evidence to prove that Plaintiff was treated less favorably in the hiring process than other applicants. In fact, shortly after Plaintiff was told she had not been hired for the courtesy clerk position, a Smith's recruiter informed Plaintiff of another opening at the store that she could be considered for.

**{17}** "To avoid summary judgment [the] party opposing the motion should produce specific evidentiary facts that demonstrate a need for a trial on the merits." *Cates*, 1998-NMSC-002, ¶ 24. In order to proceed to a trial on the merits, Plaintiff had to present some evidence of a discriminatory reason for Smith's not hiring her. Plaintiff's mere assertion that Smith's explanation is a pretext for intentional pregnancy discrimination is an insufficient basis for denial of summary judgment. *See, e.g.*, *id.* ¶¶ 22-25 (affirming summary judgment in which the plaintiff presented no evidence showing a decision to terminate him was motivated by age discrimination and where the plaintiff did not have the skills required by the defendant).

**{18}** Plaintiff did not produce evidence, circumstantial or direct, that a fact-finder might reasonably use to conclude that Smith's intended to discriminate in reaching its hiring decision. Thus, the district court properly granted summary judgment for Defendants on Plaintiff's pregnancy discrimination claim.

## II.    Reasonable Accommodation

**{19}**   The NMHRA requires employers to accommodate a person's medical condition "unless such accommodation is unreasonable or an undue hardship." Section 28-1-7(J). To prevail on a failure to accommodate claim, a plaintiff must establish: (1) that they requested an accommodation; (2) that there was a reasonable accommodation that would have allowed the plaintiff to perform the essential functions of the job; and (3) the defendant failed to provide a reasonable accommodation. UJI 13-2307D(2)-(4) NMRA. Plaintiff allegedly (1) requested time off for doctor's appointments, and (2) expressed concerns about working around chemical fumes and about pushing carts. Plaintiff claims that Smith's refused to provide her with these reasonable accommodations. On the facts before us, we reject Plaintiff's contention.

**{20}**   Plaintiff's argument overlooks the statutory provision that permits employers to make employment decisions "based on a bona fide occupational qualification." Section 28-1-7(A). As determined above, Plaintiff was not qualified for the courtesy clerk position. Plaintiff has not argued that she could have performed the work if only Defendants had made a reasonable accommodation—in fact, Plaintiff asserted in an affidavit that she was able and willing to perform the responsibilities of a courtesy clerk, plainly contradicting her argument that she requested and was denied reasonable accommodations. The NMHRA does not prohibit employers from hiring a candidate who meets the job requirements over a candidate who is not qualified simply because the unqualified candidate is in a protected class. *See Stock v. Grantham*, 1998-NMCA-081, ¶ 23, 125 N.M. 564, 964 P.2d 125 ("The [NMHRA] does not prohibit parents from discharging a nanny who is too ill to care for their child."). Thus, we conclude that no reasonable jury could have found that Defendants failed to reasonably accommodate Plaintiff. Accordingly, we hold that the district court properly granted summary judgment on Plaintiff's reasonable accommodations claim.

## III.   Rule 1-056(F)

**{21}**   We briefly address Plaintiff's claim that the district court should have stayed the summary judgment proceedings for nine to twelve months to give her an opportunity to conduct additional discovery.[4] Plaintiff argues that the limited continuance was facially unfair and prejudicial. "We review the grant or denial of a motion for continuance for an

---

[4]Plaintiff also argues that the district court's order impermissibly prevented her from relying on evidence not "obtained within the [sixty]-day continuance period," and this limitation was prejudicial to her case. "[A]n assertion of prejudice is not a showing of prejudice, and in the absence of prejudice, there is no reversible error." *Deaton v. Gutierrez*, 2004-NMCA-043, ¶ 31, 135 N.M. 423, 89 P.3d 672 (alteration, internal quotation marks, and citation omitted).We decline to address this argument as Plaintiff has failed to indicate what evidence, if any, was excluded from consideration by this order and how that exclusion was prejudicial. While Plaintiff asserts that the district court may not have considered "the affidavits," Plaintiff does not identify which affidavits she's referring to, nor does she make any argument as to how facts or evidence contained in such affidavits would overcome Defendants' prima facie showing that they were entitled to summary judgment. Therefore, Plaintiff has not demonstrated error. *See Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred.").

abuse of discretion." *Griffin v. Thomas*, 2004-NMCA-088, ¶ 53, 136 N.M. 129, 95 P.3d 1044.

**{22}** The New Mexico Rules of Civil Procedure provide that a party responding to a motion for summary judgment may request the district court stay its determination so that the non-movant can conduct additional discovery that is necessary to rebut the motion. *See* Rule 1-056(F). To request a stay, the non-movant must submit an affidavit explaining why additional time and discovery are needed. *Id.* Vague assertions in the affidavit are insufficient to support a Rule 1-056(F) continuance; rather, the party "must specifically demonstrate how postponement of a ruling on the motion will enable [them], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 38, 140 N.M. 111, 140 P.3d 532 (internal quotation marks and citation omitted).

**{23}** In this case, Plaintiff filed a Rule 1-056(F) affidavit seeking a stay in order to conduct additional discovery and argued that additional discovery was required to obtain "all relevant documents from [D]efendants" before Plaintiff conducted depositions. Plaintiff requested a continuance of nine to twelve months to conduct this discovery. The district court determined that the affidavit was "insufficient [because it] contain[ed] conclusory statements about the need for discovery." Despite this, the district court still granted a limited sixty-day continuance. We see no abuse of discretion. On appeal, Plaintiff asserts that her affidavit "explained that additional documents were needed before the depositions of . . . Vigil and . . . McKenzie could take place." However, this assertion simply repeats Plaintiff's vague assertions made below that additional time for discovery was needed. Such "vague assertions that additional discovery will produce needed, but unspecified, facts" are insufficient. *Butler*, 2006-NMCA-084, ¶ 38 (internal quotation marks and citation omitted). Without specific allegations of how Plaintiff would rebut the motion for summary judgment by obtaining additional discovery, the district court was within its discretion to proceed with the award of summary judgment.

**CONCLUSION**

**{24}** For the reasons above, we affirm the district court's entry of summary judgment.

**{25}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**