1997–NMCA–009

932 P.2d 516

Matthew James GRIFFIN, Plaintiff–Appellant,

v.

John THOMAS, individually and in his official capacity as Warden of the Penitentiary of New Mexico, Efren Montoya, M. Priscilla Gallegos, Gerald Ortiz, Norrice Aguilar, Thomas Craig, Tim LeMaster, and Lawrence Tafoya, individually and officially as employees of the New Mexico Corrections Department, Defendants–Appellees.

No. 17018.

Court of Appeals of New Mexico.

Jan. 8, 1997.

Matthew James Griffin, Santa Fe, Pro Se Appellant.

Melinda L. Wolinsky, Office of General Counsel, New Mexico Corrections Dept., Santa Fe, for Appellees.

*OPINION*

BUSTAMANTE, Judge.

1. Plaintiff Matthew James Griffin, an inmate at the Penitentiary of New Mexico, appeals from the trial court's dismissal of his claims against employees of the penitentiary under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, NMSA 1978, §§ 41–4–1 to –29 (Repl.Pamp.1996). The trial court determined that Plaintiff's complaint failed to state a claim upon which relief could be granted. *See* NMRA 1996, 1–012(B)(6). We partially reverse and remand as to Plaintiff's First Amendment retaliation claim and his Federal Due Process claims relating to the $98.00 restitution sanction, and we affirm the dismissal as to all other claims.

*FACTS*

2. Plaintiff is currently serving a life sentence of thirty years which may not be reduced by an award of meritorious good time. In July 1994, he filed suit with the district court to recover damages for personal injuries allegedly sustained by the violation of his constitutional rights by certain prison officials.

3. In his amended complaint, Plaintiff stated that he was served with a disciplinary report that alleged he had committed a "Category B" offense of willful destruction, alteration, or sabotage of state property at the penitentiary. Based upon Defendant Aguilar's allegedly false report that Plaintiff had previously destroyed property, the charge was elevated to a major level and Plaintiff was scheduled for a disciplinary hearing. Plaintiff alleged that he was not allowed to call witnesses in his behalf at the hearing conducted by Defendant Ortiz, that the reasons for excluding Plaintiff's witnesses were not documented, that he was not given advance notice of the elevating factor(s), that factual findings were made on evidence not presented at the hearing, that portions of the hearing were conducted off the record, that Ortiz's decision was not based upon substantial evidence, and that Ortiz proceeded with the hearing in bad faith and with malice.

4. Ortiz entered a written disciplinary decision finding Plaintiff guilty of the charge.

Sanctions were imposed on Plaintiff, consisting of fifteen days in disciplinary segregation, restitution in the amount of $98.00, and thirty days loss of good time.[1] Plaintiff subsequently asserts that Defendant Aguilar circumvented Plaintiff's attempts to appeal the decision.

5. Thereafter, seven reports alleging "Category B" offenses pertaining to Plaintiff's refusal to obey orders were filed against Plaintiff. Plaintiff suffered a loss of his classification status, had his custody scoring points elevated, and was reprimanded. Plaintiff has since had the status of involuntary segregation at the penitentiary. In September 1993, Plaintiff was moved to the North Facility, which is used to house confidential informants and those requesting voluntary segregation. Plaintiff contends that, as a result, it appears to other prisoners that he is associating with informants, making it impossible for him to be placed in the general population.

6. In early November 1993, Plaintiff filed a grievance alleging staff misconduct. Two weeks later Plaintiff was ordered to be subjected to additional restrictions which prevented him from participating in the programs, jobs, or activities provided to other inmates under the Duran Consent Decree. One week after filing a second grievance in December 1993, alleging that Defendants were withholding discovery materials, Plaintiff's disciplinary regime was further increased. After seven months, Plaintiff was returned to, and still is subjected to, the disciplinary action imposed in November. Plaintiff maintains that the discipline was solely in retaliation for filing the grievances.

7. In his response to the second calendar notice, Plaintiff abandoned his state claims. *See State v. Martinez,* 97 N.M. 585, 586, 642 P.2d 188, 189 (Ct.App.) (an issue is deemed abandoned where a party fails to respond to the calendar notice's proposed disposition of the issue), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982). Neither does he dispute that the time has passed for appeal of the orders dismissing Defendants Thomas, Montoya, Gallegos, LeMaster, and Craig. *See Id.* Therefore, we affirm the trial court as to these claims and those Defendants.

## DISCUSSION

8. The central question presented on appeal is whether the matters alleged in Plaintiff's complaint were sufficient to withstand Defendants' Motion to dismiss under NMRA 1–012(B)(6). "A motion to dismiss for failure to state a claim tests the legal sufficiency of that claim, not the supporting facts." *Ramer v. Place–Gallegos,* 118 N.M. 363, 365, 881 P.2d 723, 725 (Ct.App.1994). When the plaintiff is pro se, the pleadings must tell a story from which the essential elements prerequisite to the granting of the relief sought can be found or reasonably inferred. *Id.* Only when the claimant cannot recover under any provable set of facts can the motion be properly granted. *Id.*

### Federal Due Process Claims

9. *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), is factually very similar to the case at bar in that the plaintiff there, a prisoner serving a life term, brought a civil rights action based on an allegedly improper imposition of disciplinary segregation for misconduct. As in this case, the plaintiff in *Sandin* complained that he was charged with a greater degree of misconduct than he deserved. The Supreme Court held that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at ——, 115 S.Ct. at 2301. Here, as in *Sandin,* it appears that Plaintiff's confinement did not exceed similar but totally discretionary confinement in either duration or degree of restriction, and "mirrored those conditions imposed upon inmates in administrative segregation and protective custody." *See id.* "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060,

---

1. Since Plaintiff is not eligible for good time, this sanction did not affect him. *See* NMSA 1978, § 31–21–10(A) (Cum.Supp.1996).

92 L.Ed. 1356 (1948). "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. Thus, we hold that Plaintiff failed to state a cause of action as to his liberty interest-based federal due process claims because the disciplinary action to which he was subjected—fifteen days of segregation and loss of good time—did not implicate or impinge upon a protected liberty interest.

■ 10. Our third calendar notice proposed to reverse the trial court's dismissal of Plaintiff's federal due process claims, insofar as they relate to the $98.00 restitution sanction. In their memorandum in opposition to the proposed reversal, Defendants allege that Plaintiff's complaint did not sufficiently raise a due process deprivation of property claim. We disagree. Although Plaintiff's contentions pertaining to the fine were not as clearly set out in his complaint as in the memoranda he has filed with this Court, Plaintiff did challenge the imposition of the $98.00 restitution in the factual assertion portion of his complaint. Also, in the damages section of his complaint Plaintiff requests compensatory damages, presumably for the $98.00. Plaintiff also clarified in his response to the Defendants' motion to dismiss that his request for compensatory damages was for the wrongful deprivation of $98.00. In light of the general lenity with which complaints are read, we hold that Plaintiff's complaint adequately raised a due process property claim. *See AAA Auto Sales & Rental, Inc. v. Security Federal Sav. & Loan Ass'n,* 114 N.M. 761, 762–63, 845 P.2d 855, 856–57 (Ct.App. 1992) (New Mexico construes the rules of civil procedure liberally, particularly as they apply to pleadings).

■ 11. Relying on *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984), Defendants also contend that Plaintiff has no federal claim actionable under 42 U.S.C. Section 1983 in this case because an alternative state remedy provides due process. *Hudson* held that when a prison official deprives a prisoner of property in a "random and unauthorized" manner, due process is not violated if the state provides an adequate post deprivation remedy. However, *Hudson* has been interpreted as being inapplicable when prison officials' actions follow an administrative process that fails to provide adequate process for the prisoner, holding that this is not the kind of "random and unauthorized intentional conduct" at issue in *Hudson. See Quick v. Jones,* 754 F.2d 1521, 1523–24 (9th Cir.1985); *Jones v. Clark,* 607 F.Supp. 251, 257 (E.D.Pa.1984). When the deprivation is not random and unauthorized, but occurs pursuant to an affirmatively established or de facto policy, procedure, or custom, the state has the power to control the deprivation and, therefore, generally must, in the absence of compelling reasons to the contrary, give the plaintiff a reasonable predeprivation hearing. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Gillihan v. Shillinger,* 872 F.2d 935, 939–40 (10th Cir.1989). The deprivation of $98.00 alleged by Plaintiff in this case did not occur because of "random and unauthorized conduct" as occurred in *Hudson.* Instead, according to the complaint, it came about pursuant to a hearing where Plaintiff alleges he was not permitted to present witnesses or testify on matters relevant to the $98.00 restitution sanction. Under these circumstances, *Hudson* is not applicable. We reverse and reinstate Plaintiff's federal due process claims relating to the $98.00 restitution sanction.

## First Amendment Claim of Retaliation

■ 12. Our second and third calendar notices proposed to reverse the trial court's dismissal of Plaintiff's First Amendment claim of retaliation to the extent this claim was not affected by Plaintiff's failure to appeal the original dismissals of Defendants Thomas, Montoya, Gallegos, LeMaster, and Craig. In this regard, we proposed to hold that there is no qualified immunity for Plaintiff's claims of retaliation, since his grievance was a form of protected speech. *See Sanchez v. Sanchez,* 777 F.Supp. 906 (D.N.M. 1991) (court refused to give instruction on qualified immunity because the type of speech alleged was protected and whether employees were terminated in retaliation for

exercising free speech was a question for the jury to decide).

13. In their memorandum in opposition to the proposed reversal, Defendants argue that Plaintiff has failed to show that his "punishment" was beyond that typical deprivation inherent in incarceration. *See Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. However, the Court in *Sandin* expressly excepted violations of First Amendment rights from its holding. *Id.* at —— n. 11, 115 S.Ct. at 2302 n. 11. Our review of Plaintiff's complaint indicates that his allegations that he was subjected to retaliation as a result of his having filed two grievances were sufficient to withstand the motion to dismiss. Accordingly, we reverse the trial court's dismissal of this claim as to the remaining Defendants and remand to the trial court for further proceedings.

14. Defendant Barreras argues that because he has never been personally served in this matter, this Court and the district court lack personal jurisdiction over him. Barreras asserted this before the trial court as well. However, it appears from the order of dismissal that the trial court did not rule on this matter, and instead dismissed Plaintiff's complaint for failure to state a claim upon which relief could be granted. On remand, nothing prevents Barreras from again asserting lack of personal jurisdiction as a defense.

## CONCLUSION

15. The order dismissing Plaintiff's claim alleging that he was retaliated against for exercising his First Amendment rights and his claim alleging he was deprived of due process in connection with the imposition of a monetary sanction are reversed and the matter is remanded for consideration on the merits. We affirm the trial court's order dismissing each of Plaintiff's other claims.

16. IT IS SO ORDERED.

DONNELLY and ALARID, JJ., concur.