FILED
United States Court of Appeals
Tenth Circuit

November 29, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

RANDY FLOWERS,

    Plaintiff - Appellant,

v.

UNITED PARCEL SERVICE, INC.,

    Defendant - Appellee.

No. 22-2025
(D.C. No. 2:19-CV-01219-GBW-KRS)
(D. N.M.)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Randy Flowers appeals the district court's grant of summary judgment against

him on claims of unlawful discrimination and retaliation under New Mexico law.  We

have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.    STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment.  *See Twigg*

*v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011).  The question is

---

\* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

whether Flowers has raised a genuine issue for trial as to any of his claims. *See* Fed. R. Civ. P. 56(a). We must "view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to [Flowers]." *Twigg*, 659 F.3d at 997.[1]

## II.     BACKGROUND & PROCEDURAL HISTORY

The facts in the light most favorable to Flowers are as follows.

### A.     The August 2017 Safety Audit

Flowers was a business manager at UPS's distribution facility in Las Cruces. On August 3, 2017, another UPS employee, Trisha Muñoz, tipped off Flowers that a third-party safety auditor would arrive at the Las Cruces facility later that day to conduct a surprise audit. Flowers quickly learned that some of the paperwork documenting regular safety training for the drivers had not been completed. His regional supervisor, Jerwin Burke, told Flowers to re-create the paperwork. Flowers assigned that task to two employees who worked under him, Patrick Wood and Christopher Rivera. Specifically, Flowers asked Wood and Rivera to find the relevant drivers, review the paperwork with them, and obtain their signatures.

---

[1] Some of Flowers's arguments rely on New Mexico state courts' interpretation of what issues are susceptible to summary judgment under New Mexico court rules. We may consider these decisions for their persuasive value, but they do not bind us. "In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate, procedural question whether judgment as a matter of law is appropriate." *Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006).

Wood and Rivera did not meet with the relevant drivers. They instead prepared the paperwork, backdated it, and forged the drivers' signatures. Then they presented the paperwork to Flowers. Flowers knew they had prepared the paperwork that day (contrary to the dates written on the paperwork) but the record is not clear if he knew they had forged the signatures. Regardless, there was no UPS policy against re-creating the paperwork if the training had really happened—and Flowers believed it had.

## B.    UPS's Investigation

A few days after the audit, Rivera reported to a UPS human resources officer that Flowers had instructed him and Wood to fabricate (not re-create) the training records. UPS assigned three of its employees to investigate: Glenn Mickelson (a human resources manager), Leo Lane (from the company's security department), and Matt Woodruff (also from the security department). They interviewed everyone involved. As relevant here, the key points that came out of those interviews were as follows:

- Rivera and Wood told essentially the same story. They said that Flowers instructed them to complete the training paperwork, and they responded that some of the drivers had not completed the relevant training. Flowers then told them to "do what you have to do to get it done," Aplt. App. vol. I at 213 (internal quotation marks omitted), and to "use their relationships with the drivers in order to get the paperwork

3

completed," *id.* at 221.  So they fabricated the documents (not just forged the signatures), and Flowers knew that.

- Wood also reported that a different supervisor named Tony Sedillo had asked him (Wood) to re-sign documentation for training he had completed earlier that year.

- Muñoz, who had tipped off Flowers about the audit, claimed that Rivera told her the day after the audit that he and Wood had fabricated paperwork to document training that never happened.

- Flowers, for his part, said that the instructions to complete the paperwork came from Burke, the regional supervisor.  Flowers insisted that the relevant training had actually happened, and that he never instructed or hinted to anyone that they should fabricate records for training that never happened.

- Burke denied instructing Flowers to create paperwork for previously completed training exercises.

- A supervisor named Patricia Frausto claimed she had been a part of the efforts to re-create the paperwork, along with Rivera and Wood.  She said Flowers had instructed them that they could re-create paperwork for training that had actually happened, but she was not instructed to fabricate anything.  She also reported seeing incomplete training paperwork on Wood's desk about a month before the audit.

4

The investigators decided that Rivera and Wood were credible and Flowers was not. They sent a recommendation to Daniel Moore, the regional human resources manager, that Flowers be terminated for violating UPS's integrity policy. Moore reviewed the investigative records, reached the same conclusion, and then recommended to someone (the record does not say who) that Flowers be terminated.

UPS terminated Flowers on March 27, 2018, for violating the integrity policy. The record does not clarify who made the final decision, but UPS describes Moore as "the ultimate decisionmaker," Aplee. Resp. Br. at 22; *cf.* Aplt. App. vol. III at 581 (making the same claim in summary judgment briefing). Flowers has never disputed this description, so we will accept it for purposes of this appeal.

As for the others involved in the incident, UPS concluded that Muñoz also violated the integrity policy, and it demoted her. UPS found that Rivera and Wood violated the integrity policy, but it did not discipline them. Finally, the record is unclear whether UPS found that Sedillo (who had instructed Wood to re-sign a training document) violated any policy. In any event, it imposed no discipline on Sedillo.

## C.    Flowers's Claims of Discrimination and Retaliation

Flowers was 52 years old when he was fired. He claims his firing was motivated by animus toward his age, or was in retaliation for complaining about age discrimination. He also claims he was fired in retaliation for reporting safety violations to OSHA. The allegations underlying those theories are as follows.

Woodruff (one of the investigators) interviewed Flowers on August 10, 2017, one week after the audit. During the interview, Flowers either reported to Woodruff that he believed he had been subject to age discrimination at UPS, or he accused Woodruff of conducting the interview in an age-discriminatory manner—the record is equivocal. Also, during the interview, Flowers said he was planning to report certain safety violations to OSHA. After the interview, Woodruff put Flowers on administrative leave pending the results of the investigation.

Flowers again complained to UPS of age discrimination in September 2017. The record does not reveal the form this complaint took, or to whom it was addressed. That same month, however, UPS assigned another of its employees, Karl Walter, to take over Flowers's duties while he was on administrative leave. Walter was 39 or 40 years old at the time.

In October 2017, Flowers filed a charge of age discrimination with the EEOC, and he reported safety violations to OSHA. Flowers complained of age discrimination again in a meeting with Mickelson (one of the investigators) in February 2018. He also announced that he had reported UPS to OSHA. Finally, he complained of age discrimination at his termination hearing on March 27, 2018.[2]

After the termination, UPS permanently appointed Walter to replace Flowers in Las Cruces.

---

[2] We have not found the specifics of the various age-discrimination complaints in the record.

### D.    Flowers's Lawsuit

Flowers filed suit in New Mexico state court, pleading causes of action solely under New Mexico law, specifically: (i) age discrimination, in violation of the New Mexico Human Rights Act (NMHRA); (ii) retaliation for opposing age discrimination, also in violation of the NMHRA; and (iii) retaliation for reporting age discrimination and safety problems, in violation of New Mexico common law.  UPS removed the lawsuit to federal district court, relying on diversity jurisdiction. Following discovery, UPS moved for summary judgment on all claims and the district court granted that motion.

## III.    ANALYSIS

### A.    Age Discrimination

The NMHRA prohibits employers from firing otherwise qualified employees because of their age.  *See* N.M. Stat. Ann. § 28-1-7(A).  When (as in this case) an employee tries to prove NMHRA-prohibited discrimination through circumstantial evidence, New Mexico courts apply the *McDonnell Douglas* burden-shifting framework.  *See Smith v. FDC Corp.*, 787 P.2d 433, 436–37 (N.M. 1990).  The parties do not argue over the first two steps of that framework—*i.e.*, that Flowers made out a prima facie case of age discrimination, and that UPS countered with a non-age-related explanation for its decision—so we jump directly to the final step. Thus, Flowers must come forward with evidence from which a reasonable factfinder could conclude "that [UPS's] proffered nondiscriminatory reason [*i.e.*, Flowers directed subordinates to fabricate training documents] was pretextual or otherwise

7

inadequate." *Garcia v. Hatch Valley Pub. Schs.*, 458 P.3d 378, 386–87 (N.M. 2018) (internal quotation marks omitted).

Flowers's claim of pretext rests on his assertion that UPS's investigatory conclusions are "unworthy of belief." Aplt. Opening Br. at 23. We will discuss his various supporting arguments below, but we pause first to explain what we understand Flowers to be claiming when he says that the investigatory conclusions are unworthy of belief.

The investigators heard two stories during their investigation. Rivera and Wood said Flowers directed them to fabricate training records, and Muñoz partly backed up that account. Flowers said that he directed Rivera and Wood to document training that had already occurred, and Frausto partly backed up that account. The investigators decided to credit Rivera, Wood, and Muñoz over Flowers and Frausto. They passed on their findings to Moore, who agreed and terminated Flowers.

If Flowers means to say that Rivera's, Wood's, and Muñoz's accounts are *inherently* unworthy of belief, he has not supported that argument. For example, he does not argue that their respective stories were implausible, contradictory, or otherwise incredible, such that Moore could not have relied on them in good faith.[3]

---

[3] In the background section of his opening brief, Flowers says he told the investigators that Rivera and Wood had recently been disciplined for violating the UPS integrity policy (specifically, instructing a subordinate to underreport missed packages). Perhaps Flowers meant to imply that this was reason to question Rivera's and Wood's credibility, but he never makes any argument to that effect until his reply brief. "[A]rguments raised for the first time in a reply brief are waived." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1112 n.5 (10th Cir. 2017). Regardless, this does not amount to a charge that Rivera's and Wood's accounts were

8

He also does not argue that the investigation was procedurally flawed (*e.g.*, the investigators approached their task as if the outcome was a foregone conclusion, or overlooked someone important they should have interviewed, or conveyed the witnesses' statements to Moore selectively or inaccurately).

Thus, we understand Flowers to be arguing that, although

- the investigation appears to have gone by-the-book, and

- a reasonable decisionmaker could have concluded that Flowers instructed his subordinates to fabricate training documents,

factors *external* to the investigation could still lead a reasonable jury to decide that Moore did *not* credit Rivera, Wood, and Muñoz over Flowers, but instead used the investigation as an opportunity to terminate Flowers because he wanted to replace him with someone younger.

With this in mind, we turn to the evidence and arguments Flowers proffers in support of this theory.

### 1.    No Policy Against Recreating Training Documents

Flowers argues that the UPS human resources department has not "cite[d] to a single policy about recreating documents." Aplt. Opening Br. at 21. But Flowers himself recognizes that "[r]ecreating a document and falsifying a document are not the same." *Id.* at 11. UPS says it terminated Flowers for falsifying documents, not for recreating them. So the apparent lack of a policy against after-the-fact training

---

inherently unbelievable. Also, Flowers does not point us to evidence showing that Moore knew about Rivera's and Wood's recent discipline.

documentation says nothing about whether a jury could disbelieve UPS's explanation

that Moore relied in good faith on the investigatory findings.

2.     No Discipline for Sedillo

Flowers emphasizes that Sedillo instructed Wood to re-sign a document

reflecting previously completed hazmat training.  "This," he says, "was exactly the

same conduct that Flowers engaged in by having employees recreate documents [for

training] that had already been completed."  *Id.* at 22.  Yet Sedillo (then in his "early

thirties," Aplt. App. vol. II at 518, ¶ 17) received no discipline.  *See, e.g.*, *Smith*,

787 P.2d at 438 (noting that evidence of "others who were not members of protected

groups but were guilty of similar safety infractions [but] were not terminated" was

appropriately considered by the trial court when it "determin[ed] that the reason for

the [plainitff's] dismissal was race or age-based animus and not a valid business

judgment").

This argument might have force if Moore had concluded that both Flowers and

Sedillo had directed subordinates to *fabricate* training documents, not re-create them.

But Flowers does not point us to anything in the record showing that Moore (or even

the investigators that reported to Moore) deemed the hazmat training document to be

a fabrication.  Absent that, Flowers and Sedillo are not comparable because they did

not commit the same infraction.  Thus, lack of discipline for Sedillo has no

evidentiary value.[4]

---

[4] To be clear, Flowers never says Moore would have been the one to decide
whether to discipline Sedillo.  Indeed, he never identifies who would have made that

### 3.   No Discipline for Rivera and Wood

Flowers points out that Rivera and Wood were management-level employees, like him, and they were the ones who "*actually* falsified the document[s]," but they received no discipline.  Aplt. Opening Br. at 24.  At the time, Rivera and Wood were ages 29 and 36, respectively.  The district court held, however, that Rivera and Wood are not properly comparable to Flowers: "A manager directing subordinates to fabricate documents is materially different from subordinates doing so at their manager's direction."  Aplt. App. vol. III at 636.

Flowers obviously disagrees with the district court, but he "does not challenge the court's *reasoning* on this point.  We therefore do not address the matter." *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (emphasis added).

### 4.   Burke's Opinion

Burke, who supervised Flowers, said at his deposition that he "wasn't involved in the decision process [to terminate Flowers]," but he "personally would not have terminated him" due to his thirty years of service and his "outstanding job in Southwest New Mexico."  Aplt. App. vol. II at 526.  Flowers asserts that Burke's opinion should count for something, but he does not explain why.  In any event, Burke says he did not participate in the decision to terminate Flowers, so his opinion

---

decision, which is arguably fatal to this comparison. *Cf. Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1175 (10th Cir. 2006) (in an FMLA retaliation case, stating that "pretext cannot be inferred where . . . one supervisor treats one employee one way and another supervisor treats another employee a different way").  But the district court did not distinguish Sedillo on this basis, nor does UPS press this point on appeal, so we choose not to address it further.

has no relevance to whether Moore decided to terminate Flowers based on the investigatory findings or some other reason.

### 5. Position Filled by a Substantially Younger Person

UPS replaced Flowers (then age 52) with Walter, who is twelve or thirteen years younger. The district court refused to consider this as evidence of pretext. The district court said that replacement by someone outside of the protected class is one way of establishing a prima facie case, but considering the same evidence at the pretext phase "would swallow the pretextual analysis." Aplt. App. vol. III at 639.

Flowers strenuously objects to the idea that evidence to support a prima facie case cannot also be considered at the pretext phase. *Cf. Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003) (in the context of a Title VII retaliation claim, stating that "evidence supporting the prima facie case is often helpful in the pretext stage" (internal quotation marks omitted)). But we need not say whether the district court's reasoning was justifiable in this instance. We may instead presume that a jury could consider Walter's age when deciding if the investigatory findings were a pretext for age discrimination. Below, we will discuss whether this, combined with any other relevant pretext evidence, could lead a reasonable jury to find for Flowers. We will also consider another fact Flowers alleges regarding Walter, namely, that one of the investigators (Mickelson) knew UPS was looking for a new position for Walter in New Mexico.[5]

---

[5] We note this is another instance where Flowers fails to identify the relevant decisionmaker. Mickelson may have known UPS was looking for a place for Walter

12

6.    Temporal Proximity

Finally, Flowers emphasizes that he complained of age discrimination to Woodruff (the investigator who interviewed him) in August 2017, after which Woodruff placed him on administrative leave.  Then he filed a corporate complaint of age discrimination with UPS, followed by an EEOC charge.  He complained about age discrimination again in a follow-up interview in February 2018, and for the last time in his termination hearing in March 2018.  All of this, he says, shows temporal proximity, and is therefore evidence of pretext.

Temporal proximity is usually discussed as evidence of retaliation, not discrimination.  Perhaps temporal proximity would be relevant to a discrimination claim if an employer fired an employee shortly after learning that the employee is a member of a protected class (*e.g.*, the employee has a disability).  But Flowers does not claim that Moore only learned of his age just before deciding to fire him.  Also, it is not apparent what inferences Flowers believes a jury could draw from the timing of his complaints relative to other events.  For these reasons, we conclude that temporal proximity is not relevant to his discrimination claim.

7.    Synthesis

Given the foregoing, Flowers's only relevant evidence of pretext is that Mickelson knew UPS wanted to find a place for Walter in New Mexico and that Walter in fact replaced Flowers, who was more than a decade older.  Under the

---

in New Mexico, but Flowers does not tell us who, specifically, decided that Walter would take Flowers's place.

13

circumstances, we hold that no reasonable jury could infer from these facts alone that Moore terminated Flowers because of his age, and not because of the investigatory findings. Thus, the district court correctly granted summary judgment on Flowers's claim for age discrimination.

## B.     Retaliation for Opposing Age Discrimination

Flowers relies on all the same evidence just discussed to support his claim that Moore terminated him in retaliation for complaining about age discrimination. And, in this context, evidence of temporal proximity is potentially relevant. *See Metzler*, 464 F.3d at 1172. But we hold that no reasonable jury could find for Flowers on this claim.

We will assume a crucial fact, namely, that Moore knew Flowers had complained of age discrimination.[6] Even so, we do not believe a reasonable jury could infer from

- the timing of Flowers's termination relative to his complaints (which he made only after the investigation began, and about which he has never provided any details), plus

- the fact that he was replaced by a younger person

that Moore fired Flowers on account of his age-discrimination complaints, and not on account of the investigatory findings. So we affirm the district court's entry of summary judgment against Flowers on this claim also.

---

[6] This is another area where Flowers has failed to direct us to the relevant evidence, but about which the district court and UPS have said nothing.

14

## C.     Retaliation for Reporting Safety Violations

During the investigation, Flowers reported UPS workplace safety violations to OSHA.  Flowers alleges that UPS terminated him in retaliation for those reports, in violation of New Mexico common law.  *See Gutierrez v. Sundancer Indian Jewelry, Inc.*, 868 P.2d 1266, 1272 (N.M. Ct. App. 1993) ("[R]etaliat[ing] against an employee for reporting unsafe working conditions to appropriate public officials is contrary to public policy in New Mexico and gives rise to a common-law remedy.").

UPS moved for summary judgment on this claim but the district court's summary judgment order said nothing about it.  Flowers argues that this requires a remand.  UPS does not dispute that the district court failed to rule on this claim but argues that Flowers has presented no evidence that Moore was aware of Flowers's OSHA complaints when he made the termination decision.  *See also* Aplt. App. vol. III at 592 (raising the same argument in its summary judgment reply brief).  In reply, Flowers repeats that he told Woodruff and Mickelson about his OSHA complaints, but he does not address UPS's argument that he lacks evidence of Moore's knowledge.

"Where an issue has not been ruled on by the court below, we generally favor remand for the district court to examine the issue," *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013), unless "the proper resolution is beyond any doubt," *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).  We believe the proper resolution of this claim is beyond doubt.  Flowers cannot hold UPS liable for retaliation based on his OSHA complaints without showing that the decisionmaker knew of those

15

complaints. *Cf. Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("[A]n employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII."). Because Flowers fails to respond to UPS's argument that he has no evidence Moore knew of his OSHA complaint, we hold that the district court's entry of judgment against Flowers on this claim was proper, even if the court did not explain why.

## IV.     CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Gregory A. Phillips
Circuit Judge
